HAHN & HESSEN LLP
Mark T. Power
488 Madison Avenue
New York, New York 10022
Tel:  (212) 478-7200
Fax:  (212) 478-7400

    --and—

MILES & STOCKBRIDGE P.C.
Thomas D. Renda
Joel L. Perrell Jr.
Patricia A. Borenstein
10 Light Street
Baltimore, MD  21202
Tel:  (410) 727-6464

Attorneys for Emhart Teknologies, Inc.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                                                   :
In re:                                                          :        Chapter 11
                                                                   :
DANA CORPORATION, *et al.,*                      :        Case No.: 06-10354 (BRL)
                                                                   :
                    Debtors.                              :        (Jointly Administered)
-------------------------------------------------------x
                                                                   :
EMHART TEKNOLOGIES, INC.,                   :
                                                                   :
                    Appellant,                           :        07 CV 5461 (PAC)
                                                                   :
            v.                                                 :
                                                                   :
DANA CORPORATION, *et al.,*                      :
                                                                   :
                    Appellees.                           :
-------------------------------------------------------x


**BRIEF OF APPELLANT EMHART TEKNOLOGIES, INC.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................................iv

I.    STATEMENT OF THE CASE ........................................................................1

II.   STATEMENT OF APPELLATE JURISDICTION ......................................2

III.  STATEMENT OF THE ISSUES PRESENTED..........................................2

IV.   STATEMENT OF FACTS...............................................................................3

V.    STANDARD OF APPELLATE REVIEW ....................................................6

VI.   ARGUMENT ...................................................................................................6

A.  THE BANKRUPTCY COURT ERRED IN FINDING THAT THE VALUE OF EMHART'S
    RECLAMATION CLAIM WAS ZERO DOLLARS...............................................6

    1.  Congress did not intend Reclamation Claims to be "destroyed" by financing
        incurred *after* the Reclamation Claim is asserted...................................6

B.  THE BANKRUPTCY COURT ERRED IN FINDING THAT DEBTORS' POST-PETITION
    PLEDGE OF THEIR ASSETS TO THE DIP LENDERS, AND THE SATISFACTION OF THE
    PRE-PETITION LIENS FROM DIP LOAN CONSTITUTED A "DISPOSITION" OF THE
    RECLAIMED GOODS...............................................................................9

1.  The Debtors' post-petition pledge of their assets to the DIP Lenders, and the satisfaction of the Debtors' pre-petition secured debt with a portion of the proceeds of the DIP Loan did not constitute a disposition of the goods that defeated Emhart's Reclamation Claim……………………………………………9

2.  Even if the Bankruptcy Court did not err in following *Dairy Mart*, the Bankruptcy Court's finding that Emhart's Reclamation Claim is without value was still in error, because it is based on a flawed presumption..…...................11

3.  The rationale employed by the Bankruptcy Court to determine that the Reclamation Claims were valueless, despite the fact that the Pre-Petition Lender was *oversecured*, should be rejected……………………………….………..13


C.  **THE BANKRUPTCY COURT ERRED IN FINDING THAT THE DIP LENDERS QUALIFIED AS BUYERS IN THE ORDINARY COURSE OR OTHER GOOD FAITH PURCHASERS**........15

1.  Emhart's Reclamation Claim should not be denied if the DIP Lenders had knowledge of the Reclamation Claims, and did not include those goods in their collateral base when extending the DIP Facility………………….……………15

D.  **THE DEBTORS SHOULD BE ESTOPPED FROM ASSERTING THAT THE FINAL FINANCING ORDER INVALIDATED EMHART'S RECLAMATION CLAIMS**………........16

1.  The Bankruptcy Court improperly relied on the Post-Petition Financing Order to find that the Reclamation Claims were subordinate to, or extinguished by the DIP Liens, even though the Reclamation Claimants never received notice of the Post-Petition Financing Order, and the Post-Petition Financing Order expressly preserved the rights of trade creditors……………………...……………...…...16


V.   CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page Number**

**Statutes & Rules**

11 U.S.C. § 546………………………………………………………………..…passim

11 U.S.C. § 364…………………………………………………………….…….…17

28 U.S.C. 158………………………………………………………………….…..2

U.C.C. § 2-702………………………………………………………….…...2, 7, 8, 15, 16

Bankruptcy Abuse Protection and Consumer Protection Act of 2005,
Pub. L. No. 109-8, 119 Stat. 23 (April 20, 2005) ………………………...……2, 6, 8, 11, 13

**Cases**

Licensing by Paolo, Inc. v. Sinatra (In re Gucci),
126 F.3d 380 (2d Cir. 1997)……………………………………………….…….6

Klein v. Civale & Trovato, Inc. (In re Lionel Corp.),
29 F.3d 88 (2d Cir. 1994)……………………………………………….…….6

LoPresti v. Terwilliger,
126 F.2d 34 (2d Cir. 1997) …………………………………………….…….6

In re Southold Dev. Corp.,
134 B.R. 705 (Bankr. E.D.N.Y. 1991). …………………………………….…..6

In re Leeds Building Products, Inc.,
141 B.R. 265 (Bankr. S.D. Ga. 1992) …………………………………….……7, 14

In re Arlco, Inc.,
239 B.R. 261 (Bankr. S.D.N.Y. 1992)…………………………………….……….7

In re Dairy Mart Convenience Stores, Inc.,
302 B.R. 128 (Bankr. S.D.N.Y. 2003)……………………………………….…..9, 10, 11

In re Phar-Mor, Inc.,
301 B.R. 482 (Bankr. N.D. Ohio 2003)……………………………………….…..10, 11

In re Georgetown Steel Company, LLC,
318 B.R. 340 (Bankr. D.S.C. 2004)……………………………………….…….10

Pester Refining Company v. Ethyl Corp.,
964 F.2d 842 (8th Cir. 1998)……………………………………...…….…...…..14

In re Reliable Drug Stores, Inc.,
70 F.3d 948 (7th Cir. 1995) ……………………………………………..…..14

United States v. Westside Bank,
732 F.2d 1258 (5th Cir. 1984)…………………………………………..…14, 17

Brody v. Village of Port Chester,
434 F.3d 121 (2d Cir. 2005)……………………………………………….……16, 17

Baker v. Latham Sparrowbush Associates,
72 F.3d 246 (2d Cir. 1995)……………………………………………….……17

Gunster v. Scranton Illuminating Heat & Power Co.,
27 A. 550, 181 Pa. 327 (Pa. 1987)…………………………………………….……12

Baker v. Latham Sparrowbush Associates,
72 F.3d 246 (2d Cir. 1995)…………………………………………….……17

In re Kountze Bros,
79 F.2d 98 (2d Cir. 1995)……………………………………………….…..12

## Other Authorities

BLACK'S LAW DICTIONARY (8TH ED. 2004)……………………………………..12

JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE,
Vol. 4 Sec. 32-11 (2006)……………………………………………..…………14

AMJUR TRUSTS § 284 (2007)…………………………………………………12

## STATEMENT OF THE CASE

This is an appeal from the April 26, 2007 order of the United States Bankruptcy Court for the Southern District of New York (Lifland, B.J.) (the "Bankruptcy Court") holding that the reclamation claim asserted by Appellant Emhart Teknologies, Inc ("Emhart" or "Appellant") should be valued at "zero", and denied in its entirety (the "Order").

The Bankruptcy Court based its ruling upon the fact that the Debtors, Dana Corporation and its affiliates (hereinafter collectively referred to as the "Debtor", or Appellees"), obtained post-petition financing *after* they commenced their Chapter 11 cases on March 3, 2006, and *after* Appellant had asserted its reclamation claim. Appellant was not provided with notice of the post-petition financing motion filed by the Debtors, and the final post-petition financing order entered by the bankruptcy court expressly recited that it did not impair the rights of trade creditors.

Notwithstanding these facts, the Bankruptcy Court held that the granting of post-petition liens upon all of the Debtors' assets was the legal equivalent of a "sale" of Appellant's goods, and cut off Appellant's reclamation claim. Under the bankruptcy court's ruling, Appellant's claim (which was valid and merely subordinate to the prior liens held the by Debtors' pre-petition lenders), was instead eliminated entirely notwithstanding that the Debtors never sold or transferred Appellant's goods, apart from granting a security interest in them (along with an interest in the rest of the Debtors' real and personal property).

Because this construction of Appellant's reclamation rights is at odds with Congress' expressed intent to strengthen the rights of reclamation creditors under the Bankruptcy Abuse

Protection and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (April 20, 2005) ("BAPCPA"), Emhart has appealed the Bankruptcy Court's Order to this court.

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction of the bankruptcy appeal under 28 U.S.C. 158(a)(1).

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the Bankruptcy Court erred, as a matter of law, in reconciling and establishing the value of Emhart's reclamation claim under 11 U.S.C. § 546(c) as $0.00.

2.     Whether the Bankruptcy Court erred, as a matter of law, in holding that the Debtors' post-petition pledge of their assets to their post-petition DIP Lenders, and the satisfaction of the Debtors' pre-petition secured debt with a portion of the proceeds of the DIP Loan, constituted a "disposition" of the goods that were subject to reclamation claims so as to entirely defeat Emhart's reclamation claim.

3.     Whether the Bankruptcy Court erred in finding that the Debtors' post-petition DIP Lenders qualified as buyers in the ordinary course or other good faith purchasers pursuant to Section 2-702 of the Uniform Commercial Code, without inquiring whether the DIP Lenders relied on the goods subject to reclamation claims, or whether the goods subject to reclamation claims were, in fact, necessary to satisfy the Debtors' secured claim.

4.     Whether the Debtors should be estopped from asserting that the Final Financing Order invalidated Emhart's reclamation claims, because (a) the Financing Order expressly provided that it did not impair the rights of trade creditors, and (b) the Financing Motion was never served on Emhart or the other reclamation creditors.

## STATEMENT OF THE FACTS

Appellant engages in the sale of fastening products to the domestic automobile industry. Prior to the petition date, Emhart, like many of the Debtors' suppliers, sold goods on open credit to the Debtors.

Dana commenced its Chapter 11 case on March 3, 2006. Emhart asserted its reclamation claim under Section 546(c) of the Bankruptcy Code on March 3, 2006, as amended by a subsequent letter dated March 20, 2006, seeking to reclaim goods sold to the Debtor within 45 days prior to the commencement of the bankruptcy cases, as provided by law (the "Reclamation Claim").

On the same day they commenced their Chapter 11 cases, the Debtors' filed their Motion to Establish Reclamation Procedures. [Docket No. 22, Item No. 1.] On March 6, 2006, the Bankruptcy Court entered its Order Establishing Reclamation Procedures. [Docket No. 82, Item No. 5.] On March 29, 2007, the Bankruptcy Court entered its Amended Order Establishing Reclamation Procedures. [Docket No. 724, Item No. 8.]

The Debtor's Reclamation Motion did not assert that the Debtor intended to eliminate or otherwise affect its statutory obligation to honor reclamation claims by obtaining post-petition financing. Instead, the Reclamation Motion asserted what the law essentially provides: that reclamation claims would be "subject to the prior rights of a holder of a security interest of such goods . . .." (Recl. Mot. [Docket No. 22, Item No. 1.] at ¶ 12)

It is undisputed that, at the time the chapter 11 case was commenced, substantially all of the Debtor's assets (including, but not limited to, inventory collateral) were subject to a pre-petition lien in favor of the Debtors' pre-petition lending group. The validity of these liens was recognized in the Interim Post-Petition Order entered on March 3, 2006. [Docket No. 55, Item

No. 3]  As a result, Emhart and the other reclamation creditors believed that their valid reclamation claims were nevertheless subordinate to the rights of Dana's Pre-Petition Lending Group (the "Pre-Petition Lenders") (assuming that the bankruptcy court found that the Pre-Petition Lenders obtained their interest in the inventory in "good faith.").

The Debtors also filed their Motion to Obtain Post-Petition Financing on March 3, 2006 [Docket No. 30, Item No. 2].  According to the Affidavit of Service filed by the Debtors on March 7, 2006, the Post Petition Financing Motion was never served on Emhart.  (Aff. of Service dated Mar. 7, 2006 [Docket No. 100, Item No. 7])

Moreover, the Final Post-Petition Financing Order, entered on March 29, 2006, recognized the rights of trade creditors and (effectively) subordinated the liens granted to the Post-Petition Lender to such claims, as follows:

> For the Avoidance of doubt, (i) nothing contained in this Final Order or any DIP Loan Document impairs, modifies or otherwise affects the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense (each a "Deduction") of any customer or supplier of any Debtor in respect of any account, account receivable payment intangible or other payment obligation of that customer of supplier.

Final Post-Petition Fin. Ord. [Docket No. 721, Item No. 7] at ¶ 30)

The notion that the granting of post-petition financing voided or eliminated reclamation claims was not raised in the Financing Motion.  Indeed, the first time this argument was ever raised was when the Debtors' filed their Noticed of Reconciled Reclamation Claims on June 30, 2006.  [Docket No. 1650, Item No. 9] There, the Debtors suddenly took the position that NO reclamation claim was valid, by virtue of the existence of "prior liens." See Notice of Reconciled Recl. Claims, Exh. B [Docket No. 1650 Item No. 9]  Subsequently, the Debtors' Initial Brief clarified that the Debtors' "Prior Lien Defense" was in fact based entirely on the liens granted by the *Post Petition Financing Order* and *not* the mere existence of prior liens granted to the Pre-

Petition Lenders before the bankruptcy cases were commenced. (Debtors' Initial Brief [Docket No. 3939, Item No.17] at pp. 7-9)

The Debtors stipulated that the Pre-Petition Lenders were repaid from the proceeds of the DIP Loans authorized by the Final Financing Order. (Id. at p. 10). The Debtors never resold the goods supplied by Emhart and others — they were essential to the Debtors' continued operation in Chapter 11.

The Bankruptcy Court agreed with the Debtors' argument, and ruled in its April 19, 2007 Memorandum Decision that the granting of the DIP Loan was a "sale" of the inventory that was subject to Emhart's reclamation claim, and therefore defeated the claim entirely. (Mem. Decision. [Docket No. 5136, Item No. 26] at p. 16)   The Bankruptcy Court barely addressed the question of whether Emhart and others had received notice of the Post-Petition Financing Order, or whether the reclamation claimants justifiably relied on the language in the Post-Petition Financing Order, which protected the rights of trade creditors from the liens granted by under Post-Petition Financing Order.  Rather, the Bankruptcy Court skirted the issues, merely holding in the final paragraph of the Memorandum Decision that "the Interim DIP Order and the Final DIP Order, both final and unappealable, contain explicit findings of good faith"… and "the Reclamation Claimants were not lulled by the Debtors into believing that they would receive administrative claims for their reclamation demands."  (Mem. Decision. [Docket No. 5136, Item No. 26] at p. 20)

The Bankruptcy Court's decision was entered by Order dated April 26, 2007. [Docket No. 5175, Item No. 27]  Emhart timely noted this appeal on May 4, 2007.

## STANDARD OF APPELLATE REVIEW

No testimony was taken by the Bankruptcy Court, and no findings of fact were made to support its holding.[1]

Questions of law are subject to de novo review.  Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997); Klein v. Civale & Trovato, Inc. (In re Lionel Corp.), 29 F.3d 88, 92 (2d Cir. 1994).  Mixed questions of law and fact are reviewed de novo.  LoPresti v. Terwilliger, 126 F.2d 34, 39 (2d Cir. 1997); In re Southold Dev. Corp., 134 B.R. 705, 708 (Bankr. E.D.N.Y. 1991).

## ARGUMENT

**A.    THE BANKRUPTCY COURT ERRED IN FINDING THAT THE VALUE OF EMHART'S RECLAMATION CLAIM WAS ZERO DOLLARS**

**1.    Congress did not intend Reclamation Claims to be "destroyed" by financing incurred *after* the Reclamation Claim is asserted.**

Congress amended Section 546(c) of the Bankruptcy Code when it enacted BAPCPA.  Specifically, Congress expanded the applicability of the right of reclamation to cover all goods supplied to a debtor within 45 days before the commencement of a title 11 case:

> Except as provided in subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods--
>
> > (A) not later than 45 days after the date of receipt of such goods by the debtor; or
> >
> > (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

---

[1] As noted below, the Debtors and the various reclamation claimants stipulated to certain facts relating to their arguments on the Debtors' "Prior Lien Defense."

11 U.S.C. § 546(c).

Consistent with the law in effect before 2005, Congress made the new 45-day right of reclamation "subject to the **prior rights** of a holder of a security interest in such goods or the proceeds thereof." Id. (emphasis added).

Emhart does not contest that if the Debtors' Pre-Petition Lenders meet the good faith test, they held "prior rights" in the goods Emhart seeks to reclaim when the Debtors' Chapter 11 cases were filed and Emhart asserted its Reclamation Claim.   But such "prior" rights did not eliminate Emhart's reclamation rights; the Reclamation Claim was merely subject to, or subordinate to, the liens granted prior to the Reclamation Claim.   See 11 U.S.C. § 546(c); In re Leeds Building Products, Inc., 141 B.R. 265, 268 (Bankr. S.D. Ga. 1992) ("The use of the term 'subject to' indicates that right to reclaim is not automatically extinguished merely because there exists a claim with higher priority"). Only when the secured lender is forced to liquidate its collateral securing its loans, and the inventory subject to reclamation is actually sold to satisfy the loan, is the right of reclamation entirely defeated by a prior security interest.   See In re Arlco, Inc., 239 B.R. 261, 273 (Bankr. S.D.N.Y. 1992).

The Bankruptcy Court concluded that while references to non-bankruptcy law (namely, Section 2-702 of the Uniform Commercial Code) were eliminated from amended Section 546(c), Congress did not intend to give reclamation claimants in bankruptcy superior rights to those reclaiming goods outside of bankruptcy.  (Mem. Decision [Docket No. 5136, Item No.26] at p. 13).

This conclusion alone, however, was insufficient to support the Bankruptcy Court's ultimate decision that Emhart's Reclamation Claim was valueless, because the parties have

stipulated that the Debtors' goods securing the Pre-Petition Lien were never used to pay the Pre-Petition Lenders.[2]

To value Emhart's reclamation claim at zero, the Bankruptcy Court resorted to the conclusion that merely granting a post-petition lender a new lien in the Debtors' assets was sufficient to destroy the Reclamation Claim altogether. (Id. at p. 19). However, the DIP Lenders obtained rights in the goods sought to be reclaimed *after* Emhart's right of reclamation arose.

Accordingly, by the plain language of amended Section 546, which subordinates reclamation claims only to the rights of "prior" lien holders, Emhart's reclamation claim should not have been subject to or subordinated to the rights of the DIP Lenders in the goods.   The Bankruptcy Court's  conclusion that the DIP Lenders were entitled to be treated as "good faith purchasers" under Section 2-702 of the Uniform Commercial Code with rights superior to the reclamation creditors is flatly inconsistent with BAPCPA's expressed purpose to enhance protections afforded to reclaiming creditors.  This court should hold that the only liens to which reclamation claims are subject (i.e., subordinate to) are those that arose *prior* to the assertion of the right of reclamation, and not those asserted after the reclamation rights have been asserted in a pending bankruptcy case.[3]

---

[2] See Debtors' Initial Brief [Docket No. 3939, Item No.17] at p. 9 ("On March 30, 2006, pursuant to the terms and conditions of the DIP Facility and the Final DIP Order, the Debtors repaid the Prepetition Indebtedness in full using funds borrowed under the DIP Facility").

[3] Indeed, as explained *infra*, the Bankruptcy Court received no evidence that the DIP Lenders even relied upon the goods that were subject to reclamation claims in determining how much to lend the Debtors and what collateral would be considered in determining such loan.

**B.    THE BANKRUPTCY COURT ERRED IN FINDING THAT DEBTORS' POST-PETITION PLEDGE OF THEIR ASSETS TO THE DIP LENDERS, AND THE SATISFACTION OF THE PRE-PETITION LIENS FROM DIP LOAN, CONSTITUTED A "DISPOSITION" OF THE RECLAIMED GOODS**

**1.    The Debtors' post-petition pledge of their assets to the DIP Lenders, and the satisfaction of the Debtors' pre-petition secured debt with a portion of the proceeds of the DIP Loan did not constitute a disposition of the goods that defeated Emhart's Reclamation Claim.**

The Bankruptcy Court found that Emhart's reclamation claim was rendered valueless because the Reclaimed Goods were "disposed of" in satisfaction of the Pre-Petition Lien.  In doing so, the Bankruptcy Court relied upon a case decided under the prior version of Section 546(c), In re Dairy Mart Convenience Stores, Inc., 302 B.R. 128, 134 (Bankr. S.D.N.Y. 2003). Dairy Mart held that the pledge of collateral to a new lender in exchange for payment of the pre-petition lien from the DIP facility is, in effect, a sale of the goods or their proceeds to the pre-petition lender.

In its opinion, the Bankruptcy Court improperly focused on what the Debtors' Pre-Petition Lender *could* have done in this case, rather than what actually occurred. Specifically, the Bankruptcy Court opined that the Pre-Petition Lenders *could* have foreclosed on the Reclaimed Goods in order to satisfy their liens.  (Mem. Decision [Docket No. 5136, Item No.26] at p. 19)

Had the Pre-Petition Lenders chosen to enforce their lien rights and liquidated the Reclaimed Goods, Emhart's Reclamation Claim would have been extinguished.  This, however, is not what occurred.  In the present case, the Debtors' business continued to operate, and the Pre-petition Lenders were paid in full from the DIP Facility.  See Debtors' Initial Brief [Docket No. 3939, Item No. 17] at p. 10 ("On March 30, 2006…pursuant to the terms and conditions of the DIP Facility and the Final DIP Order, the Debtors repaid the Pre-petition Indebtedness in full"). Indeed, while the Pre-Petition Lenders could have assigned their Pre-Petition Lien to the DIP Lenders, they did not.

Rather, the Debtors sought and received authority from this Court to grant new liens to the DIP Lenders – liens that, as explained below, were never "prior" to the Reclamation Claims. As such, the fact that the Pre-petition Liens were satisfied should not defeat the validity of the Reclamation Claims.

In reaching its decision, the Bankruptcy Court rejected the rationale of the Bankruptcy Court for the Northern District of Ohio in In re Phar-Mor, Inc., 301 B.R. 482 (Bankr. N.D. Ohio 2003). Emhart submits that the Phar-Mor decision is much more consistent with the new provisions of Section 546(c) and should have been followed here.

In Phar-Mor, the court agreed with the Dairy Mart court that if an undersecured creditor forecloses on goods sought to be reclaimed and then uses those proceeds to pay down the secured debt, the reclamation claim is valueless. Id. at 496. However, to the extent that a pre-petition lender is paid from a DIP facility, and not from the sale of goods sought to be reclaimed, and the pre-petition liens are released, a reclaiming seller may then enforce its right to reclaim. Id. at 497. See also In re Georgetown Steel Company, LLC, 318 B.R. 340 (Bankr. D.S.C. 2004) (reclaiming seller's administrative claim allowed where the prior secured creditor was paid in full and impliedly released its lien on seller's goods). Thus, the court in Phar-Mor held that it is the secured creditors' actual enforcement that determines the value of the sellers' rights of reclamation. Phar-Mor, 301 B.R. at 497.

In rejecting the Phar-Mor rationale and adopting the Dairy Mart rationale, the Bankruptcy Court overlooked what the Debtor and its lenders – highly sophisticated and well-represented parties – actually accomplished by their actions. Instead, the court below gave effect to what it presumed the parties might have intended.

Whether or not the Debtor and the DIP Lender meant to prime the reclamation claims by satisfying the Pre-Petition Liens out of the DIP Facility, this is not what transpired, and the court should not treat it as such.

While both the Dairy Mart and the Phar-Mor cases took somewhat formalistic approaches to the characterization of nearly identical facts, the Phar-Mor result is the better approach under the current statute governing reclamation claims.  By expanding the reclamation window from 20 to 45 days, Congress clearly intended to expand the rights of reclamation in the bankruptcy context.  See 11 U.S.C. § 546(c).  Because BAPCPA enhanced the protections afforded to reclaiming creditors, the Phar-Mor approach (that the granting of post-petition liens to the DIP Lender and the satisfaction of pre-petition liens from the DIP Facility does not constitute the disposition of assets so as to render reclamation claim valueless) is clearly better law.  The Bankruptcy Court's decision to engage in a presumption that the Reclaimed Goods were somehow disposed of in satisfaction of the Pre-Petition Liens was inaccurate and particularly inappropriate in this case.  Accordingly, this Court should find that the Bankruptcy Court's decision was in error.

> **2.** **Even if the Bankruptcy Court did not err in following *Dairy Mart*, the Bankruptcy Court's finding that Emhart's Reclamation Claim is without value was still in error, because it is based on a flawed presumption.**

The Debtors have asserted, and the Bankruptcy Court agreed, that a reclamation claimant it is not entitled to require that a secured lender "marshal" assets. (Mem. Decision [Docket No. 5136, Item No. 26] at pp. 16-17)

In reality, no goods were ever sold by the Pre-Petition Lenders to enforce their lien, so the doctrine of marshalling is not, and never has been, applicable in this case.

A better framework for understanding the arguments of the parties in this case is the notion of "legal presumption" or "presumption of law" as it applies to reclamation rights. The Debtors, in essence, urged the Bankruptcy Court to *presume* that while virtually *all* of the Debtors' assets were pledged to secure the DIP Loans, the goods that were subject to the right of reclamation (rather than the Debtors' accounts receivable and other collateral) should be considered to be liquidated *first* in deciding whether the DIP Lenders can be repaid. Conversely, Emhart and the other reclamation claimants asked the Bankruptcy Court to presume the opposite; that the goods subject to Emhart's Reclamation Claim were *not* necessary to satisfy the DIP Lien when there has been no liquidation of the Debtors' assets and the Debtors continue to operate their businesses.

This Court is entitled to, and ought to engage in a legal presumption[4] as to how the Debtors and their secured lenders realize upon the value of the Debtors' property that protects the reclamation claimants. In the law governing constructive trusts, courts may presume that the Debtor will transfers its own property before it disposes of assets belonging to other parties. This legal presumption forms the basis of the "lowest intermediate balance" rule that governs tracing of funds subject to a constructive trust.[5] So too in this case, the Court should presume that any assets "disposed of" to satisfy the Pre-Petition Lien were assets that were those otherwise unencumbered by claims such as Emhart's Reclamation Claim.

Thus, even if this Court finds that the pledge of assets to the DIP Lender and the satisfaction of Pre-Petition Liens constituted an "integrated transaction," that should not end the

---

[4] See BLACK'S LAW DICTIONARY (8th ed. 2004) defining "presumption of law" as "a legal assumption that a court is required to make if certain facts are established and no contradictory evidence is produced." See also Gunster v. Scranton Illuminating Heat & Power Co., 27 A.550, 552, 181 Pa. 327 (Pa. 1897) ("legal presumptions ought to be logical inferences from the natural and usual conduct of men under the circumstances").

[5] The basis for the "lowest intermediate balance" rule is the presumption that "a person is innocent of crime or wrong, and that it is reasonable to think that a trustee ordinarily will withdraw for his or her private purposes money belonging to him or her rather that that belonging to the trust." 76 AM. JUR. 2D § 284 (2007) (citing In re Kountze Bros., 79 F.2d 98 (2d Cir. 1935)).

inquiry as to whether Emhart's Reclamation Claim has value. Emhart's Reclamation Claim should continue to be a valid claim that must be satisfied in full unless the DIP Lender actually liquidates its collateral and the inventory is *actually sold* to repay the DIP Loans.

      **3.**       **The rationale employed by the Bankruptcy Court to determine that the Reclamation Claims were valueless, despite the fact that the Pre-Petition Lender was *oversecured*, should be rejected.**

In its opinion, the Bankruptcy Court noted that reclamation is an *in rem* remedy, and that "if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless." (Mem. Decision [Docket No. 5136, Item No. 26] at p.17) The Bankruptcy Court then found that because the Pre-Petition Indebtedness totaled approximately $381 million, and exceeded the value of each individual reclamation claim, that every reclamation claim was without value, regardless of whether the Pre-petition Lenders were vastly oversecured. (Id.)

If this holding is taken to its logical conclusion, however, the result is absurd. For example, a pre-petition lender with a $1 million lien secured by $100 million in collateral could render valueless reclamation claims totaling $10 million, so long as each reclamation claim is $999,999 or less. This cannot possibly be the result that Congress intended, particularly after the passage of BAPCPA, which made its primary goal the prevention of bankruptcy abuse by debtors. Under the Bankruptcy Court's holding, there is virtually nothing to stop an insolvent company from loading up on inventory and exploiting the credit extended by vendors with the knowledge of an impending bankruptcy in order to build assets at the reclaiming sellers' expense.

The Debtors have admitted that the Pre-Petition Lenders were greatly oversecured[6]; thus there were surplus assets after the Pre-Petition Lender was satisfied from which the Debtors could grant the Reclamation Claimants adequate protection. Although Section 546 of the Bankruptcy Code states that reclamation claims are "subject to" the interests of prior secured parties, it does not state that reclamation claims are voided or eliminated by those interests. Thus, even if the Court holds that Emhart's Reclamation Claim is subordinate to a prior lienholder, it should still be afforded priority status as against a debtor's general unsecured creditors.

This result is in accord with longstanding law under the Uniform Commercial Code. "Any excess in value (over that necessary to pay 100% to the secured creditor after accounting for its other collateral) that results from the new assets should go back to the reclaiming seller." JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, Vol. 4 Sec. 32-11 (2006); See also Pester Refining Company v. Ethyl Corp., 964 F.2d 842, 846 (8th Cir. 1998); In re Reliable Drug Stores, Inc., 70 F.3d 948, 950 (7th Cir. 1995) ("If senior secured lenders can be satisfied from the inventory, a reclamation claimant also can be satisfied from the residue"); United States v. Westside Bank, 732 F.2d 1258, 1265 (5th Cir. 1984); Leeds, 141 B.R. 268 ("The use of the term 'subject to' indicates that right to reclaim is not automatically extinguished merely because there exists a claim with higher priority").

---

[6] See Response Brief of Emhart Teknologies, Inc. [Docket No. 4640, Item No. 23], Exhibit A thereto, in which the Debtors stipulated that (i) the book value of the assets securing the prepetition secured claims exceeds the prepetition secured debt and the face amount of the currently outstanding reclamation claims and (ii) to the extent value is relevant, the parties will use book value as the measure for purposes of the hearing on the prior lien defense; See also Debtor's Initial Brief [Docket No. 3939, Item No. 17] at p.5, fn 13.

C.     **THE BANKRUPTCY COURT ERRED IN FINDING THAT THE DIP LENDERS QUALIFIED AS BUYERS IN THE ORDINARY COURSE OR OTHER GOOD FAITH PURCHASERS**

    1.     **Emhart's Reclamation Claim should not be denied if the DIP Lenders had knowledge of the Reclamation Claims, and did not include those goods in their collateral base when extending the DIP Facility.**

The Bankruptcy Court concluded that the DIP Lenders were good faith purchasers or buyers in the ordinary course under Section 2-702 of the Uniform Commercial Code, without permitting the parties an opportunity to object to the Post-Petition Financing Motion, or to engage in discovery regarding whether the DIP Lenders relied on the Reclaimed Goods in extending the DIP Facility.[7]  In the event that the DIP Lenders did not include the Reclaimed Goods in their collateral base when extending the DIP Facility to the Debtors, it would be vastly inequitable to now cut off Emhart's right of reclamation as to goods on which the DIP Lenders never relied.

In the present case, when the DIP Lenders advanced funds to the Debtors under the DIP facility, they had intimate knowledge of the Debtors' business, and were aware that vendors were continuing to ship to the Debtors on credit during the 45-day period prior to the bankruptcy filing.  Accordingly, the DIP Lenders knew of the reclamation claims as of the Petition Date, and took their lien in the Debtors' assets subject to those valid reclamation claims.  Accordingly, the Bankruptcy Court's finding that the DIP Liens were superior, without permitting the parties to engage in discovery, was in error.

---

[7] On November 13, 2006, Emhart served the Debtors with a copy of Emhart's First Request for Production of Documents (Aff. of Service [Docket No. 4070, Item No. 18]), requesting, among other things, certain information concerning the DIP Lenders reliance upon and knowledge of the Reclamation Claim.  The Debtors objected to Emhart's discovery requests, and on January 19, 2007, the Bankruptcy Court entered an order deferring discovery on the issue of the Pre-Petition Lender's and the DIP Lender's good faith until after the Bankruptcy Court rendered a decision on the validity of the Debtors' "Prior Lien Defense."  Accordingly, the Bankruptcy Court reached its decision in this matter without the benefit of any fact discovery by the parties.

Moreover, even if some Reclamation Claimants had notice of the Debtor's Financing Motion or DIP Order, the Post-Petition Financing Order recognized the rights of trade creditors, and effectively subordinated the DIP Liens to reclamation claims by stating:

> Nothing contained in this Final Order or any DIP Loan Document impairs, modifies or otherwise affects the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense (each, a 'Deduction') of any customer or supplier of any Debtor in respect of any account, account receivable, payment intangible, or other payment obligation of that customer or supplier.[8]

(Post-Petition Financing Order [Docket No. 721, Item No. 7] at ¶ 30)  That the Bankruptcy Court now reads the DIP Order to cut off Emhart's Reclamation Claims, when such subordination was never contemplated by the DIP Order, works a substantial hardship of the Reclamation Claimants and further violates their due process rights by eliminating Reclamation Claims they were never afforded an opportunity to adequately defend. See Brody v. Village of Port Chester, 434 F.3d 121, 127 (2d Cir. 2005) (a deprivation of property must be preceded by notice under principles of due process).

**D.    THE DEBTORS SHOULD BE ESTOPPED FROM ASSERTING THAT THE FINAL FINANCING ORDER INVALIDATED EMHART'S RECLAMATION CLAIM**

**1.    The Bankruptcy Court improperly relied on the Post-Petition Financing Order to find that the Reclamation Claims were subordinate to, or extinguished by the DIP Liens, even though the Reclamation Claimants never received notice of the Post-Petition Financing Order, and the Post-Petition Financing Order expressly preserved the rights of trade creditors.**

In its opinion, the Bankruptcy Court found that the DIP Lenders, as secured creditors with a lien on the goods to be reclaimed, qualify as a "good faith purchaser for value" within the meaning of section 2-702(3) of the UCC.  (Mem. Decision [Docket No. 5136, Item No. 26] at p.20) In so finding, the Bankruptcy Court stated that the interim and the final Post-Petition

---

[8] The Debtors now argue that this provision was intended to address only setoff claims.  However, it is not so limited.  There is no question that Emhart's Reclamation Claim is a "claim" or "right" of a supplier in respect of an account of that supplier.

Financing Orders both contained findings of good faith on the part of the DIP Lenders. (Id.) However, under Section 364 of the Bankruptcy Code, a court may only authorize a debtor to incur debt secured by a senior lien on property subject to a lien if there is adequate protection of that interest, and after notice and a hearing.    At least one Circuit Court had held that the Bankruptcy Code treats reclamation claims as "equivalent to a perfected security interest under Article 9" of the Uniform Commercial Code.    United States v. Westside Bank, 732 F.2d 1258, 1265 (5th Cir. 1984).

Furthermore, while Section 364 permits the Debtors to incur debt and grant superior liens to secure that debt, it does not authorize the Debtors or the Bankruptcy Court to eliminate subordinated interests in property such as Emhart's Reclamation Claim.  See 11 U.S.C. § 364(c)-(d).

Accordingly, as a Reclamation Claimant with an interest in the goods to be pledged under the Interim and DIP Orders, Emhart was entitled to notice of the Debtors' intent to jeopardize Emhart's rights.    None of the Reclamation Claimants were given notice of the Post-Petition Financing Order. Thus, not only were the Reclamation Claimants' rights wiped out in violation of their due process rights, but any finding that the DIP Lenders were good faith purchasers should not be binding with respect to the Reclamation Claimants, who never had a chance to challenge that finding. See Baker v. Latham Sparrowbush Associates, 72 F.3d 246, 254 (2d Cir. 1995) (for a party to be bound by a proceeding, due process requires notice reasonably calculated to apprise parties of the pendency of an action, and the opportunity to present objections); Brody, 434 F.3d at 127 (a deprivation of property must be preceded by notice under principles of due process).  Thus, this Court cannot deprive Emhart of its rights in the Reclaimed Goods based upon findings contained in motions and orders of which Emhart was not given proper notice.

## CONCLUSION

For the foregoing reasons, Appellant, Emhart Teknologies, Inc., respectfully requests this Court reverse the judgment of the United States Bankruptcy Court for the Southern District of New York valuing Emhart's Reclamation Claim at Zero Dollars, and remand this matter consistent with its ruling.

Dated: New York, New York
June 28, 2007

Respectfully submitted,

_/s/ Mark T. Power_____
Mark T. Power (MP 1607)
Jeffrey Zawadzki (JZ 1656)

HAHN & HESSEN LLP
Mark T. Power
488 Madison Avenue
New York, New York 10022
Tel: (212) 478-7200
Fax: (212) 478-7400

--and—

MILES & STOCKBRIDGE P.C.
Thomas D. Renda
Joel L. Perrell Jr.
Patricia A. Borenstein
10 Light Street
Baltimore, MD 21202
Tel: (410) 727-6464
Fax: (410) 385-3700